UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
                                        ┌─────────────────────┐
                                        │                     │
                                        │                     │
                                        │ DATE:    10/9/18    │
                                        └─────────────────────┘
```

MARY McPARTLAN-HURSON,

                Plaintiff,

-against-

WESTCHESTER COMMUNITY COLLEGE, and
WESTCHESTER COUNTY,

                Defendants.

13-CV-2467 (NSR)(LMS)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Mary J. McPartlan-Hurson ("Plaintiff") commenced this action against Defendants Westchester Community College ("WCC") and Westchester County (the "County") (collectively "Defendants") by filing a Summons and Complaint with this Court on April 12, 2013. (See ECF No. 1 (the "Complaint" or "Compl.").) Plaintiff's Complaint asserts causes of action grounded in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (the "ADA"). Plaintiff alleges that WCC discriminated against her on the basis of her race and disability when they denied her a diversity fellowship for the Fall 2009 semester and subsequently terminated her in December of 2009, and claims that her termination also amounted to retaliation. By Order dated June 20, 2018, this Court ruled on Defendant's Motion for Summary Judgment, granting it in part and denying it in part. (See Opinion & Order, dated June 21, 2018 ("SJ Decision"), ECF No. 153.). Specifically, the Court granted Defendants' Motion dismissing Plaintiff's race and disability discrimination claims, (id. at 18-24, 31) but denied the Motion with respect to

Plaintiff's retaliation claims. (*Id.* at 24-31.). Subsequently, the Court set a trial date for Plaintiff's retaliation claims for November 9, 2018.

On September 25, 2018, Plaintiff filed a pre-trial motion *in limine*, which is presently before the Court. (*See* Plaintiff's Memorandum of Law in Support of her Motion in Limine, ("Pl. Mem."), ECF No. 157). In this Motion, Plaintiff's seeks to preclude Defendants from introducing written evaluations of Plaintiff, which were completed by students for each semester she taught, as well as electronic summaries of those written student evaluations on the basis that Defendants did not rely on either when making the decision to terminate Plaintiff's employment. (*Id.* at 1.) For the same reason, she also seeks to preclude Defendants from offering any evidence that mentions, refers to, or attempts to convey to the jury in any manner, directly or indirectly, the content or substance of the written student evaluations and their electronic summaries. (*Id.*)

For the following reasons, the Plaintiffs' motion is DENIED.

## BACKGROUND

The Court assumes familiarity with the facts and allegations in this case. *See e.g.*, *McPartlan-Hurson v. Westchester Community College, et al.*, Case No. 13-CV-2467 (NSR), (S.D.N.Y. June 21, 2018). Accordingly, it turns to the merits of Plaintiff's Motion.

## DISCUSSION

### I. Legal Standard

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F.Supp.2d 173, 176–77 (S.D.N.Y.2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)). An *in*

*limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir.1996). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09–CR–1153 (MEA), 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139 (quoting *Luce*, 469 U.S. at 41, 105 S. Ct. at 163)).

The Federal Rules of Evidence provide that only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action." Fed. R. Evid. 401 (a)–(b). Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Though the "standard of relevance established by the Federal Rules of Evidence is not high," *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir.1985), the Court has "broad discretion to balance probative value against possible prejudice" under Rule 403. *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir.2008).

II. **Application**

Plaintiff anticipates that Defendants will seek to introduce written student evaluations and electronic tabulation summaries of those evaluations (collectively, "Evaluations") for the semesters leading up to the decision not to rehire Plaintiff and to terminate her employment. (Pl.

3

Mem. at 3.) Plaintiff therefore seeks to preclude the admission or any mention of Plaintiff's Evaluations during trial. (*Id.*) Plaintiff Relies on Fed. R. Evid. 402 and 403, arguing that the Evaluations are irrelevant hearsay that, if shown to a jury, would unfairly prejudice Plaintiff. (*Id.* at 3, 6.) Specifically, she states that Dr. Maryanne Vent, Vice-Chairman of the English Department, Dr. Frank Madden, Chairman of the English Department, and Dr. Heather Ostman, Vice-Chairman of the English Department all "admitted that they did not review Plaintiff's student evaluation or electronic tabulation summaries and that they were not considered as part of the decision to terminate her employment." (*Id.* at 4-6.)[1] Further, she asserts that Drs. Madden, Vent, and Ostmann knew that the College's policy prohibited student evaluations from being used in hiring decisions and, therefore, they intentionally did not consider them when making the hiring decisions. (*Id.* at 5).[2] Therefore, she argues, "any negative scores or disparaging comments about her performance or personality will be prejudicial to her and could influence the jury to accept Defendant's proffered reasons for the termination of her employment…" (*Id.* at 3.)

---

[1] Plaintiff points to the following portions of the decision-makers' deposition testimony in support of her argument: Dr. Vent, the ultimate decision maker, testified that she did not review written student evaluations" (citing Deposition of Dr. Maryanne Vent, dated January 9, 2014, ("Vent Dep.") at pp. 83, 87, 134-135, ECF No., 158, Ex. 1) "and did not review the summaries of student evaluations (Vent. Dept. at p. 87); Then Dean Wang, "confirmed that student evaluations were not used in connection with the decision to rehire adjunct professors." (Deposition of Dr. Jianping Wang, dated November 15, 2013 ("Wang Dep.") at pp. 12-13, ECF No., 158, Ex. 2); "Dr. Madden also testified that he did not review any of Plaintiff's student evaluations prior to meeting with Drs. Vent and Ostman in which the decision not to rehire her and terminate her employment was made." (Deposition of Dr. Frank Madden ("Madden Dep,") at p. 278, ECF No., 158, Ex. 3); "Dr. Madden further testified that he received student evaluations and electronic tabulation summaries but that he did not read them, he passed them on to Dr. Wang." (Id. at pp. 236-237); "Similarly, Dr. Ostman testified that she never reviewed student evaluations." (Deposition of Dr. Heather Ostman, dated October 31, 2013 ("Ostman Dep.") at pp. 105-107, ECF No., 158, Ex. 4). (Pl. Mem. at pp. 4-5.)

[2] Plaintiff does concede that the Evaluations were used or reviewed by the relevant decision makers "on one occasion" but claims it was "not in the semester prior to the decisions not to rehire her and terminate her employment." (Pl. Mem. at 4) (citing Vent Dep. at pp. 84-85.)

Defendants argue that Plaintiff's Motion must be denied because the Student Evaluations are relevant and in no way prejudicial to Plaintiff. (Declaration of Darius P. Chafizadeh in Opposition to Motion *in Limine*, ("Def. Opp."), ECF No. 160 ¶ 10.) Specifically, they argue that:

> while the English Department may not have specifically reviewed specific Student Evaluations contemporaneously to the decision not to bring Plaintiff back for the Spring 2010 semester as an adjunct professor, the evidence shows that the Madden, Ostman and Vent were aware of poor student comments of Plaintiff prior to any decision not to rehire her and, as a result, such documents are relevant to this matter and no way unfairly prejudice Plaintiff.

(*Id.* ¶ 7.) In addition, Defendants note that Dr. Madden wrote an e-mail contemporaneously in 2009, reflecting that he had considered the Student Evaluations, which resulted in him setting up a meeting with Plaintiff and monitoring whether student approval of Plaintiff improved. (*Id.* ¶ 8.) In addition, Defendants argue that the Collective Bargaining Agreement ("CBA") does not preclude relying on the Student Evaluations for assessing regular adjunct faculty. (*Id.* ¶ 9.)

The Court agrees with Defendants. In order to assess the Evaluations under Fed. R. Evid. 402 and 403, the Court need first establish that the Evaluations are relevant under Fed. R. Evid. 401. Rule 401 provides that "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, Plaintiff's exhibits demonstrate the Evaluations' plain relevance. For example, Dr. Vent testified that she discussed Plaintiff's Evaluations at some point with Dr. Madden and learned that Plaintiff had been called to speak to then Dean Wang about them because "they were low." (Vent Dec. at pp. 84-85.) Similarly, Dr. Wang testified that while student evaluations were not used as the basis for "recommend[ing] that an adjunct professor not be hired for the following year", "many factors went into that

decision, not *just* the student evaluation." (Wang. Dec. at pp. 94-95) (emphasis added.) Dr. Madden, too, discussed how the student evaluations were a reason that Dean Wang, prior to Plaintiff's termination, met multiple times with Plaintiff. (Madden Dec. at pp. 74, 79, 80, 89.) This collective testimony demonstrates that whilst not central, the Evaluations were at least considered when assessing faculty members' job performance.

Moreover, the Court agrees with Defendants' argument that even if Dr. Madden and other members of the English Department did not specifically review the Evaluations right at the time they made the termination decision, they were aware of their general nature and discussed them with one another in e-mail and other informal conversations. (*See* Def. Opp. ¶¶ 23-24, Ex A) ("Maureen has a history of problems. [Dr. Wang] and I have talked with her about her student evaluations and the rate of attrition in her classes.") *See also Russell v. New York Univ.*, No. 17-2527-CV, 2018 WL 3115795 (2d Cir. June 25, 2018) (affirming District Court's granting summary judgment in favor of defendants on retaliation claim, where employer-university relied on evidence of university using student evaluations over the years to conduct performance review meetings and as one of many factors for assessing adjunct faculty members' job performance history.) It was also permissible for the Department to have loose knowledge of these evaluations in the backs of their minds because while the CBA does reflect that the administration was prohibited from using the Evaluations for disciplinary purposes for full-time and senior adjunct professors, the CBA contains no analogous rule pertaining to regular adjunct faculty. (*See* Def. Opp., Ex. B.) And in any event, neither party indicates that it intends to show that the Evaluations were the primary basis for the termination decision.

Further, as Defendants correctly note, once Plaintiff establishes a prima facie case of retaliation, it is there burden to show evidence of a legitimate, nonretaliatory reason for the adverse employment action and then Plaintiff's ultimate burden to show that the employer's explanation is merely a pretext. (Def. Opp. ¶¶ 19-20.) Evidence of job performance-related reasons for an employer to terminate an employee is probative, vital, and indeed, frequently-used in similar contexts. *See e.g., id.; see also Xu-Shen Zhou v. S.U.N.Y. Inst. of Tech.*, No. 6:08-CV-0444 GTS/ATB, 2011 WL 4344025, at *2 (N.D.N.Y. Sept. 14, 2011), *aff'd in part, vacated in part, remanded sub nom., Xu-Shen Zhou v. State Univ. of New York Inst. of Tech.*, 499 F. App'x 105 (2d Cir. 2012) (allowing employer-university to defend retaliation claim with record evidence establishing that [employee] was not renewed because of his [IDEA] scores, student complaints, student evaluations, and the recommendations of the Peer Review Committee"); *Malacarne v. City Univ. of New York*, 289 F. App'x 446, 448 (2d Cir. 2008) (affirming District Court's holding on retaliation claim, where District Court chronicled several non-pretextual examples of plaintiff's poor job performance, including various prior performance evaluations and behavioral complaints). Again, the Court finds the Evaluations facially relevant.

Plaintiff argues that even if probative, the prejudicial impact of the Evaluations outweighs their utility. (Pl. Mem. at 3.) The Court finds that Plaintiff overstates her risk of prejudice. Plaintiff's ultimate burden is to show that any reason Defendants offer for her termination decision is a pretext for the actual reason, which is retaliation for lodging complaints about the fellowship process and her claims of discrimination. On the other hand, Defendants need to prove that the reason for not rehiring Plaintiff was due to her cumulative poor work

7

performance. The evaluations, therefore, are relevant probative evidence. Though it is their burden to find ample relevant and appropriate evidence for their case, the peril that Defendants will face if they cannot rely on or mention the Evaluations, is far graver than the imagined peril that Plaintiff would face in having the Evaluations introduced at trial.

Additionally, this Court finds that Plaintiff's concern about the likelihood of the unduly influencing the jury are inflated. A jury does not live under a rock. The Court trusts that they will be able to appreciate the power dynamic in a student-teacher relationship and weigh the value of anonymous student evaluations commensurately. Accordingly, Plaintiff's Motion is DENIED.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion is DENIED. The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 157.

Dated: October 9, 2018
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge